IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NOBLE ENERGY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SALLY JEWELL, Secretary of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; AND BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT,<br><br>    Defendants. | No. 1:14-cv-00898 (CKK) |

**PLAINTIFF'S COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Steven J. Rosenbaum, D.C. Bar No. 331728
Bradley K. Ervin, D.C. Bar No. 982559
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Phone: (202) 662-5568
Fax: (202) 778-5568
srosenbaum@cov.com

*Counsel for Plaintiff Noble Energy, Inc.*

November 17, 2014

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.     *United States v. Texas* Applies to this Action and Presumptively Reads the Common Law Doctrine of Discharge into BSEE's Regulations. ....................................... 3

II.    Neither the OCS Lands Act Nor BSEE's Regulations "Speak Directly" to the Issue Addressed by the Common Law Doctrine of Discharge. .......................................... 7

        A.     BSEE's Regulations Do Not Speak Directly to the Question of Discharge. ........... 8

        B.     BSEE's Broad Environmental Authority is Irrelevant. ......................................... 10

CONCLUSION .......................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*Abington Crest Nursing & Rehab. Ctr. v. Sebelius*,
   575 F.3d 717 (D.C. Cir. 2009) .................................................................................... 3

*\*ABN Amro Bank, N.V. v. United States*,
   34 Fed. Cl. 126 (1995) ..................................................................................... 3, 6, 10

*\*Amoco Production Co. v. Fry*,
   904 F. Supp. 3 (D.D.C. 1995) .................................................................................. 6, 7

*Ashland Chem., Inc. v. Barco, Inc.*,
   123 F.3d 261 (5th Cir. 1997) .................................................................................. 3, 7

*Astoria Federal Savings & Loan Ass'n v. Solimino*,
   501 U.S. 104 (1991) ................................................................................................... 8

*Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
   268 F.3d 103 (2nd Cir. 2001) ........................................................................ 3, 7, 8, 10

*Beverly Enters., Inc. v. Herman*,
   130 F. Supp. 2d 1 (D.D.C. 2000) ............................................................................... 2

*Green v. Bock Laundry Machine Co.*,
   490 U.S. 504 (1989) ................................................................................................... 3

*Manoharan v. Rajapaksa*,
   711 F.3d 178 (D.C. Cir. 2013) ................................................................................ 4, 8

*Matar v. Dichter*,
   563 F.3d 9 (2nd Cir. 2009) ...................................................................................... 3, 7

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*,
   530 U.S. 604 (2000) ............................................................................................. 4, 10

*\*Noble Energy, Inc. v. Salazar*,
   671 F.3d 1241 (D.C. Cir. 2012) ..................................................................... 2, 4, 5, 6, 7, 9

*Republic of Honduras v. Philip Morris Cos., Inc.*,
   341 F.3d 1253 (11th Cir. 2003) ............................................................................ 6, 10

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) ................................................................................................... 4

*United States v. Lahey Clinic Hosp., Inc.*,
   399 F.3d 1 (1st Cir. 2005) .......................................................................................... 8

*Authorities on which Plaintiff chiefly relies

*United States v. Texas*,
   507 U.S. 529 (1993) ................................................................................................ 2, 3, 6, 7, 8

**Statutes**

5 U.S.C. § 706(2)(A) .......................................................................................................... 1, 2

**INTRODUCTION**

Plaintiff Noble Energy, Inc.'s ("Noble") September 15, 2014 memorandum in support of its motion for summary judgment (Dkt. No. 19-1) ("Noble Mem.") demonstrated that Noble and its co-lessees are not obligated permanently to plug and abandon the 320 # 2 well, and that Defendant Bureau of Safety and Environmental Enforcement's ("BSEE") April 9, 2014 order ("Challenged Order") must be set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Defendants' Response in Opposition to Plaintiffs' Motion, and Cross-Motion for Summary Judgment (Dkt. No. 21) ("Govt. Mem.") demonstrates agreement with many of the core elements of Noble's motion.

The parties agree—at least for purposes of these cross motions, *see* Govt. Mem. at 2—that, among other things, (1) the United States entered into federal offshore oil and gas lease OCS-P 320 ("Lease 320") with Noble's predecessor lessees, *see* Noble Mem. at 6; *see also id*. at 7 (describing the unitization of Leases 319, 320, 322, 323 into the Sword Unit); (2) the lessees expended millions of dollars drilling the 320 # 2 well on, and pursuant to, Lease 320, *see id*. at 4, 6; (3) the 320 # 2 well discovered oil and gas in commercial quantities, *see id*. at 6; (4) the Government materially breached Lease 320, *see id*. at 9–15; (5) Noble's and its co-lessees' contractual obligations to the Government—including the contractual obligation permanently to plug and abandon the 320 # 2 well—were discharged by the Government's material breach, *see* Govt. Mem. at 2; (6) the common law principle of discharge is well-established, *see id*. at 9–10; and (7) the substantial oil and gas resources underlying the Sword Unit, which were discovered as a result of the lessees' multi-million dollar exploration investment, have never been produced and have reverted back to the United States as lessor, *see* Noble Mem. at 14.

In the face of these crucial admissions, Defendants' opposition rests on a series of mistaken premises and a fundamental misunderstanding of the legal question at issue in this case.

1

Thus, neither BSEE nor its counsel have satisfied the D.C. Circuit's command reasonably to "explain" the basis of the Challenged Order, *see Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1246 (D.C. Cir. 2012), or, in other words, to provide "an interpretation that is both reasonable and supportive of its action here," *id*. (Williams, J., concurring).

**ARGUMENT**

The Challenged Order violates the APA's proscription on agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Because the question here is whether any legal obligation to plug and abandon the 320 # 2 well survived the Government's material breach of the underlying Lease 320, "a purely legal question, . . . the court reviews the finding *de novo* to ensure the agency [did] not exceed its authority." *Beverly Enters., Inc. v. Herman*, 130 F. Supp. 2d 1, 12–13 (D.D.C. 2000). The Government's attempt to shield the Challenged Order behind "highly deferential" review, *see* Govt. Mem. at 3,[1] is therefore misdirected.

To the contrary, this case is governed by the standards set forth in *United States v. Texas*, 507 U.S. 529 (1993), because the Challenged Order violates the well-established common law principle of discharge that is presumptively read into BSEE's regulations (and the OCS Lands Act) that invade the common law. *See infra*. While the Government "possessed legal authority to issue regulations displacing the common law," *Noble Energy*, 671 F.3d at 1249 (Williams, J., concurring), "when Congress grants an agency the authority to enact regulations that overrule common law, the question of whether the agency exercised that power through the adoption of a particular regulatory scheme should be evaluated under the same approach that the [Supreme]

---

[1] To be sure, BSEE's justifications for purporting to require Noble permanently to plug and abandon the 320 # 2 well are unreasonable and arbitrary, *see* Noble Mem. at 24–37, but those justifications are themselves legally, not factually, based.

Court used in *Texas* for evaluating whether a congressional statute modified the common law," *ABN Amro Bank, N.V. v. United States*, 34 Fed. Cl. 126, 131–32 (1995).  Accordingly, the question is whether a statute or regulation "speak[s] directly to the question addressed by the common law," and thereby "abrogate[s] a [well-established] common law principle." *Texas*, 507 U.S. at 534 (quotation omitted).

With respect to *that* question—and contrary to the Government's suggestion, *see* Govt. Mem. at 4, 9 (relying on *Abington Crest Nursing & Rehab. Ctr. v. Sebelius*, 575 F.3d 717 (D.C. Cir. 2009))—the Government, as the "party contending that legislative [or regulatory] action changed settled law[,] has the burden of showing that the legislature [or agency] intended such change." *Ashland Chem., Inc. v. Barco, Inc.*, 123 F.3d 261, 268 (5th Cir. 1997) (quoting *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 521 (1989)).  *See also Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 129 (2nd Cir. 2001) (same); *Matar v. Dichter*, 563 F.3d 9, 13–14 (2nd Cir. 2009) (same).  As further set forth below, the Government has fallen far short of its burden to show that any positive law "speak[s] directly to the question addressed" by the well-established common law principle of discharge.  *Texas*, 507 U.S. at 534 (quotation omitted).

I.   *United States v. Texas* **Applies to this Action and Presumptively Reads the Common Law Doctrine of Discharge into BSEE's Regulations.**

Defendants' threshold contention that "the *Texas* interpretive principle is not triggered" by the OCS Lands Act and BSEE regulations, because they purportedly do not "invade" the common law, *see* Govt. Mem. at 12, misunderstands what it means for a statute or regulation to invade the common law.  A direct conflict between a common law principle, on one hand, and a statute or regulation, on the other hand, is not necessary.  Rather, a statute or regulation invades the common law when, for example, the former "clearly covers a field formerly governed by the

3

common law." *Samantar v. Yousuf*, 560 U.S. 305, 320 & n.13 (2010); *Manoharan v. Rajapaksa*, 711 F.3d 178, 179 (D.C. Cir. 2013). Here, the OCS Lands Act makes the United States a lessor of mineral rights—a longstanding species of contractual party—by authorizing DOI "to sell and administer oil and gas leases." *Noble Energy*, 671 F.3d at 1242. *See also Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607, 608, 614, 621, 622, 624 (2000) (holding that an OCS lease constitutes a contract, and is subject to common law principles). After thus entering a field long governed by the common law, the OCS Lands Act then "empowers the Secretary to promulgate rules and regulations ***governing those leases***." *Noble Energy*, 671 F.3d at 1242 (emphasis added). The OCS Lands Act and BSEE's decommissioning regulations therefore invade the common law by "governing the relationship between [the Government] and private-sector market actors in a manner parallel to what in the private sector would be controlled by contract or the common law." *Id*. at 1247 (Williams, J., concurring).[2]

Indeed, the BSEE regulations at issue here relate to matters such as returning a lease to its pre-lease state, and the obligations of predecessors- and successors-in-interest. *See* Noble Mem. at 19, 31. Such matters are also covered by the common law and contract, including Lease 320 itself. *See id*. at 6, 31–34. *See also Noble Energy*, 671 F.3d at 1247 (Williams, J., concurring) ("The regulations plainly function as a supplement to the lease, and the specific ones at issue here directly complement a lease provision."). That BSEE's regulations, in several respects, define the Government's lessor-lessee relationship in terms identical to longstanding common law principles, *see* Noble Mem. at 30–34, does not, as the Government now argues, *see* Govt. Mem. at 12, demonstrate that no invasion has occurred. Indeed, if a direct conflict between a

---

[2] Indeed, the OCS Lands Act has been found to invade the common law in the past. *See Amoco Production Co. v. Fry*, 904 F. Supp. 3 (D.D.C. 1995), *aff'd in part and rev'd in part on other grounds*, 118 F.3d 812 (D.C. Cir. 1997).

statute or regulation and the common law were required to trigger the *Texas* principle, then the common law necessarily would be abrogated by the statute or regulation in every instance that *Texas* applies. As the decisions applying *Texas* illustrate, that is clearly not the case. *See* Noble Mem. at 25–26, 27–29 (citing cases).

Rather, the *Texas* principle is triggered here by the Government's entry into a field otherwise governed by the common law. *See supra*. Within that field are existing "implied caveats and qualifications that apply to comparable contract language or common law understandings." *Noble Energy*, 671 F.3d at 1247 (Williams, J., concurring). One such implied caveat and qualification is the well-established doctrine that one party's material breach discharges all remaining obligations of the non-breaching party, *see* Noble Mem. at 22–24, "a specific eventuality" not addressed by BSEE's parallel regulations, but "for which the common law provided an exception," *Noble Energy*, 671 F.3d at 1248 (Williams, J., concurring).

In these circumstances, the Government's assertion that "this case does not involve a contract, and [Noble] has identified no case that has applied the contractual doctrine of excused performance to regulatory obligations," Govt. Mem. at 10, ignores (a) that the underlying relationship is entirely contractual,[3] and (b) the breadth of the *Texas* canon of construction, which has applied a very wide range of common law principles to statutory or regulatory requirements, *see* Noble Mem. at 25–29, and begs the question at issue. That BSEE regulations do not expressly provide an affirmative defense or exception to decommissioning obligations in

---

[3]   Given that no oil and gas exploration or production activities can occur on federal OCS lands except pursuant to a government lease, the foundation of any dispute—like this—over regulatory obligations on the OCS is, ultimately, a contract. *See* Noble Mem. at 34 n.14. In that context, the Government's suggestion that Noble (or its predecessors) simply wandered voluntarily onto "federal land and drilled Well 320 #2," Govt. Mem. at 4, is a curious attempt to disassociate this case from any connection to the common law of contract. Indeed, if the discharge rule is inapplicable simply because a regulatory obligation is at stake, the D.C. Circuit would have had no reason to remand the case to BSEE.

the event of a material breach of the lease, *see* Govt. Mem. at 10–11, 12, 15, "misapprehends basic rules of statutory [and regulatory] interpretation." *Republic of Honduras v. Philip Morris Cos., Inc.*, 341 F.3d 1253, 1259 (11th Cir. 2003). Indeed, the Government has the inquiry exactly backwards. Under *Texas*' interpretive canon such an exception—***already existing in the common law's well-established doctrine of discharge***—is ***presumed*** to be incorporated into the statute or regulations as an "interpretive gloss on the[ir] . . . literal language," *Noble Energy*, 671 F.3d at 1249 (Williams, J., concurring), with that "presumption" overcome only if the statute or regulation "speak[s] directly" to the issue and provides to the contrary, *Texas*, 507 U.S. at 534–35 (quotation omitted). The common law exception is thus a part of the statute or regulation in the first instance.

For this reason, the Government's parallel complaint that the cases "cited by Noble do[] not address implied common law affirmative defenses to regulatory obligations," Govt. Mem. at 13–14, is equally irrelevant. Those cases—particularly *Amoco Production Co. v. Fry*, 904 F. Supp. 3 (D.D.C. 1995)[4] and *ABN Amro Bank, N.V. v. United States*, 34 Fed. Cl. 126 (1995)—demonstrate the operation of the *Texas* interpretive procedure to resolve that a well-established common law principle is ***read into*** the statute or regulation. Indeed, during the prior appeal the Government similarly argued, in an attempt to distinguish *Amoco* and *ABN Amro*, that "Noble had failed to identify a common law principle allowing discharge from regulatory obligations." *Noble Energy*, 671 F.3d at 1248 (Williams, J., concurring) (quotation omitted). As Senior Judge Williams explained:

---

[4] That *Amoco* involved a "since-repealed provision of the Outer Continental Shelf Lands Act," Govt. Mem. at 13, is also beside the point. The application of *Texas* is significant, not the specific common law or statutory provisions involved or the fact that the provision was subsequently repealed.

> This seems to mix two ideas, neither of them helpful to the government. Insofar as it notes that neither *ABN Amro* nor *Amoco* involved 'discharge,' it is a distinction but a pointless one; both involved the relation between the common law and a statute or regulation; the specific common law principle at issue seems unimportant. Insofar as the government's argument asks that the common law principle have an effect on a *regulation*, it offers no distinction at all. In both the cases the party invoking the common law made no claim that there was a common law principle directly applying to 'regulatory obligations'; they argued simply that the regulations, despite their literal language, should be read in light of the common law principles that governed parallel transactions in the private sector.

*Id.* at 1248–49 (Williams, J., concurring). As before, the Government confuses the *Texas* interpretive process—reading a well-established common law principle into positive law that does not speak directly to the question—with the result of that process—here, discharge from parallel regulatory decommissioning obligations due to the material breach of Noble's prior contract partner, the United States.

II.     **Neither the OCS Lands Act Nor BSEE's Regulations "Speak Directly" to the Issue Addressed by the Common Law Doctrine of Discharge.**

Having established an invasion of the common law and a well-established common law principle addressing a "specific eventuality"—the consequences of the Government's material breach of Lease 320—not considered in the regulations, the burden lies with the Government, *see Ashland Chem.*, 123 F.3d at 268; *R.J. Reynolds*, 268 F.3d at 129; *Matar*, 563 F.3d at 13–14; *Noble Energy*, 671 F.3d at 1246 (vacating plug and abandon order and remanding to agency to determine if regulations apply after material breach and, if so, "explain why"), to demonstrate that the OCS Lands Act or BSEE regulations "speak directly" to, and thereby abrogate, the common law principle of discharge, *Texas*, 507 U.S. at 534.[5] A mere "claimed inconsistency of

---

[5] That a statute or regulation need not "affirmatively proscribe the common-law doctrine at issue," does not alter the fundamental requirement that a statute or regulation must "speak directly" to the issue in order to abrogate well-established common law. *Texas*, 507 U.S. at 534–35 (quotations omitted). Contrary to the Government's argument, Govt. Mem. at 14–15, *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991), does not dictate a different test. In *Texas*, the Supreme Court both considered *Astoria* and announced the governing "speak

7

a statute with common law . . . is not enough;" to "speak directly," there must be a "clear and unambiguous expression of Congressional intent" to abrogate common law principles. *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 10 (1st Cir. 2005) (quotation omitted); *see also R.J. Reynolds*, 268 F.3d at 127 ("Principles of statutory construction require that we construe RICO in a manner that preserves the [common law] revenue rule absent clear evidence of congressional intent to abrogate it."). The Government has not met its burden.

Before this Court, the Government principally insists, as BSEE asserted in the Challenged Order, that (1) BSEE's decommissioning regulations are independent of Lease 320 and do not provide for a discharge from regulatory obligations; and (2) the OCS Lands Act grants BSEE broad authority—which BSEE's regulations implement—to protect environmental resources. The Government's repetition of these arguments here fares no better than in the Challenged Order. *See* Noble Mem. at 28–37. The former contention relies on two irrelevant premises, and the latter is non-responsive to the inquiry required under *Texas*.

### A.     BSEE's Regulations Do Not Speak Directly to the Question of Discharge.

The Government's recitation of BSEE's regulatory authority over lessees, *see* Govt. Mem. at 4–6, is a straw man. Noble has never denied BSEE's authority under the OCS Lands Act to issue regulations governing leases. Nor is that authority relevant to the issue in this case. At issue here is the ***content*** of BSEE's regulations, which, pursuant to *Texas*, are presumed to include the well-established principle of discharge. *See supra*.[6] That BSEE has regulatory authority does not "speak directly," or at all, to the question whether the resulting regulations

---

directly" test for abrogation of the common law. *See Texas*, 507 U.S. at 534–35. This has remained the test since. *See*, *e.g.*, *Manoharan*, 711 F.3d at 179–80.

[6]     Viewed in this context, the Government is simply incorrect in alleging that Noble "suggests that its decommissioning obligations were either exclusively contractual, or were primarily contractual." Govt. Mem. at 6.

8

abrogate common law principles.  *See Noble Energy*, 671 F.3d at 1249 ("Noble acknowledges that Interior possessed legal authority to issue regulations displacing the common law; nothing in the current regulations seems to have exercised that authority.") (Williams, J., concurring).

The Government acknowledges that BSEE's regulations do not explicitly address the issue addressed by the common law of discharge; namely the effect of a material breach of the underlying lease by the Government, *see* Govt. Mem. at 7, and nowhere challenge Senior Judge Williams' observation that the *Texas* principle suggests it could not do so "silently."  *See Noble Energy*, 671 F.3d at 1247 (Williams, J., concurring).

The Government in the Challenged Order sought to overcome this failing by pointing to the fact that BSEE's decommissioning regulations apply to predecessor lessees.  AR NOB0961–62.  But Noble in its summary judgment memorandum demonstrated at length that these aspects of the regulations are entirely consistent with common law principles.  *See* Noble Mem. at 30–37.  Rather than attempting to rebut that showing, the Government seeks to fall back upon the deference typically owed to an agency's interpretation of its own regulations.  *See* Govt. Mem. at 8–9.  But the Government's reliance on an agency's general interpretive authority is misplaced in the present context, given that *Texas* itself directs a canon of interpretation that presumes discharge is included in the regulations.  *See supra* pp. 5–7.[7]  And neither the Challenged Order nor the Government has identified a regulatory provision that speaks directly to the contrary.  *Compare* Govt. Mem. at 7–8 (repeating Challenged Order justifications) *with* Noble Mem. at 30–37 (demonstrating failure of Challenged Order's justifications).

---

[7] Even if the "plainly erroneous" standard of deference applied here (which it does not), BSEE's interpretation of its regulations to cover Noble despite the common law principle of discharge would be "plainly erroneous" as a violation of the interpretive presumption imposed by the Supreme Court.

### B.     BSEE's Broad Environmental Authority is Irrelevant.

As Noble explained in its Memorandum, the alleged environmental purpose of BSEE's decommissioning regulations, *see* Govt. Mem. at 7–8, is non-responsive to the question posed by this lawsuit and the common law doctrine of discharge at its center.  *See* Noble Mem. at 35. Again, the question here is not ***whether*** to permanently plug and abandon the 320 # 2 well; the question is ***who*** is responsible—Noble and its co-lessees or the Government—for arranging and paying for that operation, activities the Government routinely undertakes.  *See id*. at 35–36.

The Government contends that "Congress clearly evinced an intention to afford the Department of the Interior with broad regulatory authority to impose environmental protection obligations" on lessees, thereby abrogating common law discharge.  *See* Govt. Mem. at 15.  But the mere breadth of a statute or regulation "does not, standing alone, preempt application of the" common law.  *Philip Morris*, 341 F.3d at 1259–60.  *See also ABN Amro*, 34 Fed. Cl. at 131–32 (holding that "fairly comprehensive" regulations did not abrogate common law principle).  To the contrary, "[w]hen a statute is . . . expansive . . ., a court must be particularly careful to assure itself that Congress intended to abrogate the common law . . . ." *R.J. Reynolds*, 268 F.3d at 128. Far from abrogating the common law, the Supreme Court has made clear that common law principles continue to apply in determining the rights and obligations of OCS lessees after passage of the OCS Lands Act, *see Mobil Oil*, 530 U.S. at 608, 614, 621, 622, 624, and in this case that common law principle is the one of discharge.

## CONCLUSION

For the foregoing reasons, as well as those identified in Noble's initial memorandum, Plaintiff's motion for summary judgment should be granted, the Defendants' cross-motion should be denied, and the Challenged Order should be set aside.

                                  Respectfully submitted,

                                  <u>/s/  Steven J. Rosenbaum</u>
                                  Steven J. Rosenbaum, D.C. Bar No. 331728
                                  Bradley K. Ervin, D.C. Bar No. 982559
                                  COVINGTON & BURLING LLP
                                  1201 Pennsylvania Avenue N.W.
                                  Washington, D.C. 20004
                                  Phone: (202) 662-5568
                                  Fax: (202) 778-5568
                                  srosenbaum@cov.com

November 17, 2014                    *Counsel for Noble Energy, Inc.*