**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NOBLE ENERGY, INC.,<br>Plaintiff<br>v.<br>SALLLY JEWELL, *et al.*,<br>Defendants | Civil Action No. 14-898 (CKK) |

**MEMORANDUM OPINION**
(June 8, 2015)

Plaintiff Noble Energy, Inc., challenges an order from the United States Department of the Interior Bureau of Safety and Environmental Enforcement ("BSEE" or the "agency") requiring it to permanently plug an offshore well, Well OCS-P 0320, No. 2, including related decommissioning activity. BSEE asserts the authority to require Noble Energy to plug the well under its decommissioning regulations, found at 30 C.F.R. §§ 250.1700-1754, issued pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq*. Noble Energy argues that when its contractual obligations were discharged—under the common law doctrine of discharge—its obligations under the regulations were discharged as well. As explained further below, in the April 9, 2014, Order under review—on remand as a result of an action challenging a previous order of the agency—BSEE concluded that the decommissioning regulations do not incorporate the common law doctrine of discharge and, therefore, the regulations require Noble Energy to fulfill the decommissioning obligations. Ultimately, the question for the Court is whether the agency's interpretation of the decommissioning regulations is reasonable. If it is, then Noble Energy's challenge fails. Presently before the Court are Plaintiff Noble Energy, Inc.'s [19] Motion for Summary Judgment and Defendants' [21] Cross-Motion for Summary Judgment.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendants' [21] Cross-Motion for Summary Judgment and DENIES Plaintiff's [19] Motion for Summary Judgment. The Court concludes that the agency's interpretation of its decommissioning regulations is reasonable and, therefore, the Court upholds the challenged order. This case is dismissed in its entirety.

## I. BACKGROUND

The factual and regulatory background to this case were previously recited at length in *Noble Energy, Inc. v. Salazar* ("*Noble I*"), 770 F. Supp. 2d 322 (D.D.C. 2011), and *Noble Energy, Inc. v. Salazar* ("*Noble II*"), 671 F.3d 1241 (D.C. Cir. 2012). The Court recites here only the background essential to the Court's resolution of the currently pending motions. The Court reserves further presentation of the facts for the issues discussed below.

Pursuant to a lease acquired in 1979, Noble Energy[2] drilled an exploratory oil well, Well OCS-P 320, No. 2, off the coast of California. *Noble II*, 671 F.3d at 1242. Following a common practice, Noble Energy temporarily plugged and abandoned the well in 1985 after discovering oil and gas through its exploratory activities. *Id.* The well remains *temporarily* plugged and abandoned today, and the question in this case is whether BSEE can require Noble Energy to

---

[1] The Court's consideration has focused on the following documents:

- Pl. Noble Energy, Inc.'s Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 19;
- Defs.' Resp. in Opp'n to Pl.'s Mot. for Summary Judgment and Cross-Mot. for Summary Judgment ("Defs.' Opp'n & Cross-Mot."), ECF No. 20;
- Pl.'s Combined Reply in Supp. of its Mot. for Summary Judgment and Opp'n to Defs.' Cross-Mot. for Summary Judgment ("Pl.'s Reply & Cross-Opp'n"), ECF No. 22; and
- Defs.' Reply in Support of their Cross-Mot. for Summary Judgment ("Defs.' Cross-Reply"), ECF No. 24.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] For the sake of simplicity and clarity, the Court refers to Noble Energy and all of its predecessors in interest as "Noble Energy."

*permanently* plug that well. *See id.* Beginning at that time, Noble Energy received multiple suspensions of the lease. In 1999, Noble Energy received a four-year suspension, which ultimately became the final suspension of the lease. This lease suspension was revoked as a result of the determination by a court in the Northern District of California that the suspension "had not been assessed for consistency with California's coastal management plan" as required by the 1990 amendments to the Coastal Zone Management Act, 16 U.S.C. § 1451 *et seq*. *Id.* at 1243; *see also California ex rel. Cal. Coastal Comm'n v. Norton*, 150 F. Supp. 2d 1046, 1053, 1057 (N.D. Cal. 2001), *affirmed* 311 F.3d 1162, 1173 (9th Cir. 2002). Subsequently, the Court of Appeals for the Federal Circuit affirmed a determination by the Court of Federal Claims that "the government had effectively 'repudiated the lease agreements by putting into practice the new [court-mandated] rules applicable to the availability of requested suspensions.'" *Noble II*, 671 F.3d at 1243 (quoting *Amber Res. Co. v. United States*, 538 F.3d 1358, 1370 (Fed. Cir. 2008)) (alteration in original). Noble Energy and other lessees, together, received $1.1 billion in restitution. *Id.* In addition, pursuant to the common law of discharge,[3] Noble Energy (along with the other lessees) was discharged from all of the obligations arising from its lease, including the obligation to "remove all devices, works, and structures from the premises no longer subject to the lease." *Id.*

One year after the Court of Appeals for the Federal Circuit resolved the litigation pertaining to the government's breach of Noble Energy's lease, the Minerals Management Service,[4] a now-disbanded agency of the Department of the Interior, ordered Noble Energy to

---

[3] "Under the common law rule of discharge, one party's material breach of a contract will excuse the other party's performance." *Noble II*, 671 F.3d at 1243 n.3 (citing cases and the Restatement of Contracts).

[4] The Minerals Management Service was replaced, in all ways relevant to this action, by the Bureau of Safety and Environmental Enforcement.

"promptly and permanently plug the well," "clear the well site," and "perform any additional activity necessary to fully satisfy your decommissioning obligations" pursuant to 30 C.F.R. 250.1723 and related decommissioning regulations. *Id.* at 1244. Noble Energy challenged that order in an action in this judicial district, arguing that the government's material breach of its lease discharged its obligations under the regulations on which the agency relied. *Id.* Another judge in this district determined that "the common law doctrine of discharge did not relieve Noble of the regulatory obligation to plug its well permanently, an obligation that the lease did not itself create." *Id.* Noble Energy appealed, and the Court of Appeals for the D.C. Circuit concluded that the outcome of the case depended on the meaning of the decommissioning regulations: "If the regulations impose an obligation to plug Well 320-2 regardless of the government's breach of the lease contract, Noble's argument fails. If the regulations release the duty to plug once the government materially breaches the lease agreement, then Noble prevails." *Id*. at 1245. The Court of Appeals also concluded that the agency was "'entitled to interpret its own regulations in the first instance.'" *Id.* (quoting *Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 742 (D.C. Cir. 1990)). However, the Court of Appeals was unable to discern whether the agency had, in the original order that was then before that court, interpreted the regulations in question. *Id.* at 1244. Therefore, the Court of Appeals instructed the District Court to vacate the order of the Minerals Management Service and to remand to BSEE—which had assumed the responsibilities of the Minerals Management Service relevant to this action—for further proceedings. *Id.* at 1246.

On remand, the BSEE issued the April 9, 2014, Order that is the subject of this challenge. In the order, the BSEE interpreted the regulations in question and determined that they were independent of the obligations of the lease and were, therefore, not discharged by the

government's material breach of the lease. NOB0957-63. Accordingly, the agency ordered Noble Energy to "promptly and permanently plug" the well, including "all related activity necessary to fully satisfy its decommissioning obligations, including wellhead and casing removal and site clearance." NOB0957. This challenge followed, and Noble Energy once again argues that the agency action is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record.... Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138

(D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). The reviewing court "is not to substitute its judgment for that of the agency." *Id.* Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

## III. DISCUSSION

Relying largely on statements in *United States v. Texas*, 507 U.S. 529 (1993), regarding the relationship of statutory or regulatory schemes and prior common law doctrines, Noble Energy argues that the decommissioning regulations incorporate the common law of discharge. Noble Energy argues that it is not subject to the decommissioning obligations enumerated in those regulations given the government's material breach of the lease that encompassed Noble Energy's rights in Well OCS-P 320, No. 2. Pursuant to the interpretation stated in its 2014 Order, BSEE argues that the decommissioning regulations are independent of the contractual obligations in the lease agreement. Therefore, the agency argues, the obligations established by the regulations have not been discharged—notwithstanding the undisputed material breach by the government of the lease and the discharge of Noble Energy's contractual obligations. The Court concludes, first, that it must defer to the agency's interpretation of its own regulations and, second, that the interpretation of those regulations is reasonable. Given these conclusions, the Court also concludes that the principle of *United States v. Texas*, does not yield the result—advocated by Plaintiff—that the regulatory decommissioning obligations were discharged by the

government's breach of the lease. Accordingly, Plaintiff's challenge fails, and Noble Energy is required to comply with the decommissioning requirements of the regulations.

**A. Deference is Due to the BSEE's Interpretation of Its Regulations**

As the Court of Appeals stated in *Noble II*, "[r]esolution of this dispute depends on what the plugging regulations mean." 671 F.3d at 1244. Therefore, the Court first addresses whether deference is due to the agency's interpretation of the regulations at stake, and concludes that deference is due. It is well-settled precedent that the Court reviews the agency's "interpretation of its own regulations with 'substantial deference,' allowing that interpretation to control unless 'plainly erroneous or inconsistent with the regulation.'"[5] *U.S. Postal Serv. v. Postal Regulatory Comm'n*, No. 13-1308, 2015 WL 2191023, at *9, --- F.3d --- (D.C. Cir. May 12, 2015) (quoting *Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 514 (1994)). Plaintiff argues that, because this case involves the application of the interpretive principle stated in *United States v. Texas*—regarding the common law background of statutes—that the usual principles of deference to administrative agencies do not apply. *See* Pl.'s Reply & Cross-Opp'n at 9. Plaintiff offers no authority in support of that principle—nor do the cases cited elsewhere in Plaintiff's brief support that proposition. To the contrary, the opinion of the Court of Appeals in *Noble II* strongly suggests that deference is due. The Court of Appeals concluded that remand to the agency was necessary because "'an agency is entitled to construe its own regulations in the first instance.'" *Noble II*, 671 F.3d at 1246 (quoting *Am. Petroleum Inst.*, 906 F.2d at 742). Moreover, the Court of Appeals considered whether to defer to any interpretation in the government's litigation brief pursuant to the rule of *Auer v. Robbins*, 519 U.S. 452, 262 (1997). The Court of

[5] The Court notes that deference is not a fall-back position, as Plaintiff suggests, but rather a fundamental principle of administrative law.

Appeals, however, concluded that *Auer* deference was not due in those circumstances only because the panel could not "find any definitive interpretation of the plug and abandon regulations in the government's brief." *Noble II*, 671 F.3d at 1246. If *Auer* deference would have been due to an interpretation in the government's brief, then certainly deference is due to the interpretation issued by the agency on remand—particularly because that interpretation was the express purpose of the remand.[6] Accordingly, the Court evaluates the interpretation set out by BSEE in the 2014 Order "with 'substantial deference,' allowing that interpretation to control unless 'plainly erroneous or inconsistent with the regulation.'" *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 2015 WL 2191023, at *9 (quoting *Thomas Jefferson University*, 512 U.S. at 512, 514).

### B. The BSEE's Interpretation of its Regulations is Not Plainly Erroneous or Inconsistent with the Regulations

On remand, BSEE concluded that the regulations "impose decommissioning obligations independent of the contractual obligations in the lease." NOB0961. As applied to the circumstances in this case, the agency concluded that, "although Noble Energy's contractual obligations were discharged due to the government's breach, the duty to plug the well remains as an independent regulatory duty that exists post breach." *Id.* As explained further below, BSEE based this conclusion on its analysis of the language of the decommissioning regulations and on the purpose of those regulations. *See id.* Because of the deference due to the agency in its interpretation of its regulation, this Court's task is to determine whether the agency's

---

[6] In his concurrence, Senior Circuit Judge Stephen William "express[ed] doubt whether the Interior Department, on remand, will be able to offer an interpretation that is both *reasonable* and supportive of its action here." *Noble II*, 671 F.3d at 1246 (Williams, J., concurring) (emphasis added). Even this concurrence adopts the lens of deference by focusing on the "reasonableness" of the agency's interpretation—rather than its correctness. *See id*.

interpretation is "plainly erroneous or inconsistent with the regulation." In conducting this analysis, this Court addresses Plaintiff's arguments that the agency's regulations have not explicitly abrogated the common law principle of discharge and that, without doing so, its regulatory obligations were discharged upon the government's material breach of the lease.

BSEE first looks to the language of the regulations, noting that "the regulations explicitly apply to more than just a current lessee, and the obligations extend beyond the life of the lease." *Id.* Specifically, the agency notes that the obligations may arise before or after a party becomes a lessee, *see id.* (citing 30 C.F.R. § 250.1702); that the obligations are binding on current lessees, former lessees and operating rights owners, *see id.* (citing 30 C.F.R. § 250.1701); and that they remain binding after a lease has been assigned or relinquished, *see id.* (citing 30 C.F.R. §§ 556.62(d), 556.76). In short, the BSEE concluded that the regulatory obligations are independent of the contractual obligations because they apply to parties that are not bound by those contractual obligations. The BSEE also looked to the purpose of the regulations and noted that the regulations "serve to protect the environment and ensure wise stewardship of resources held in trust for the public as mandated under [the Outer Continental Shelf Lands Act]." NOB0962. The agency concluded that the regulations serve to realize the stated purpose of the Act, that operations "should be conducted in a manner that prevents or minimizes damage to life, property or the environment." *Id.* In the agency's view, permanently plugging an abandoned well would protect the environment. Also in the agency's view, establishing the decommissioning obligations by regulation, in addition to doing so by contract, would facilitate the protection of the environment.

The BSEE's textual argument why the regulatory decommissioning obligations are independent of the contractual decommissioning obligations is essentially that those obligations

do not apply to the same sets of entities or individuals. Specifically, the agency highlights several distinctions between the regulatory obligations and the contractual obligations: that the regulatory obligations may accrue before or after the beginning of the lease, that they remain binding after a lease is assigned or relinquished, and that they are binding on non-lessee operating rights owners. *See* NOB0961-62. Plaintiff argues that the scope of the decommissioning obligations set out in the regulations actually affirms the incorporation of common law principles in the regulatory obligations. In support of this contention, Plaintiff notes that a person who assigns a lease to another does not, merely through that action, divest themselves of all obligations of the lease. *See* Pl.'s Mot. at 31-32 (quoting Restatement (Second) of Contracts § 318(3) (1981)). In other words, Plaintiff argues, just as one who assigns a contract remains bound by the original contract obligations, the regulations state that former leaseholders continue to be bound by the regulatory obligations. Plaintiff also looks to other features of the common law pertaining to contractual obligations that suggest that the regulations mimic rather than deviate from the common law in terms of which entities are governed by those requirements. *See id.* at 30-34. Plaintiff claims that there are only minimal differences between the scope of the contractual decommissioning obligations and the scope of the regulatory decommissioning obligations and that, therefore, these differences are not properly the basis for the conclusion that regulatory obligations are independent of the contractual obligations in the relevant leases.

The Court need not delve into the substantive question of precisely whose behavior is governed by the lease provisions and whose behavior is governed by the decommissioning regulations because the only question presented is whether the agency's interpretation of its regulations is plainly erroneous or inconsistent with the underlying regulations. The regulations

clearly apply to persons that are not current leaseholders. *See Noble II*, 671 F.3d at 1244 (citing 30 C.F.R. §§ 556.62(d), 556.64(a)(5), 556.76, 250.1710). Regardless of the precise scope of obligations under a purely contractual regime, it is reasonable for the agency to conclude that the expansive scope of the regulatory decommissioning requirements shows that those requirements are independent from the contractual requirements—even if, in many instances, they would both apply to leaseholders or to other related parties.

With respect to the purpose of the decommissioning regulations, the agency's conclusion that the purpose of the regulatory requirements supports the agency's interpretation that the regulations are independent of contractual obligations stated in individual leases is also reasonable. In BSEE's view, the decommissioning regulations serve the statutory purpose of protecting the environment. Plaintiff responds that, while the purpose of the statute might demonstrate the importance of the decommissioning activities, it does not show that it is important for a particular party such as Plaintiff Noble Energy to carry out those activities. Once again, the Court's deferential standard of review is important. In a world of limited resources and competing bureaucratic priorities, it is reasonable for the agency to conclude that requiring a former lessee—even one whose contractual obligations have been discharged—to complete decommissioning activities, rather than relying on the agency to undertake those obligations, would serve the ultimate purpose of protecting the marine and coastal environments.

In sum, the Court concludes that the agency's reasoning passes muster: the agency has adequately explained, based on the purpose and the text of the regulations, its conclusion that the regulatory decommissioning obligations are wholly independent from the contractual decommissioning obligations and, therefore, they continue to apply to a party freed from the contractual obligations stated in an individual lease.

**C. The Regulatory Decommissioning Obligations Have Not Been Discharged By Operation of Common Law Principles**

The Court now addresses Plaintiff's argument that the agency's interpretation violates the principle set out by the Supreme Court in *United States v. Texas* that "[s]tatutes which invade the common law … are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Texas*, 507 U.S. at 534. Plaintiff also relies on the Supreme Court's further statement that "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.'' *Id.* at 534. The common-law principle at issue in this case is that of discharge, under which "one party's material breach of a contract will excuse the other party's performance." *Noble II*, 671 F.3d at 1243 n.3. Plaintiff argues that the regulations do not explicitly abrogate the common law principle of discharge and, therefore, the principle of discharge must be read into the regulation. *See* Pl.'s Reply & Cross-Opp'n at 6. Specifically Plaintiff argues that, because it was discharged from its contractual decommissioning obligations, it is no longer bound by the regulatory decommissioning obligations. Defendant responds that, because of its conclusion that the regulatory decommissioning obligations are independent from the contractual decommissioning obligations, there is no authority to support reading the principle into the regulations. The Court agrees with the BSEE that there is no authority to support importing the principle of discharge into a non-contractual obligation.

Plaintiff principally relies on two trial court cases for the proposition that the principle of discharge is applicable to the regulatory decommissioning obligations: *ABN Amro Bank v. United States*, 34 Fed. Cl. 126 (1995), and *Amoco Production v. Fry,* 904 F. Supp. 3d 3 (D.D.C.1995). However, notwithstanding the concurrence of Senior Circuit Judge Stephen Williams in *Noble II*, neither case can withstand the weight that Plaintiff places on it. In *ABN Amro*, a judge of the

Court of Federal Claims considered the "double forgery" of a check purportedly issued by the government and made payable to a supermarket chain, where the government had not actually issued the check and the person depositing the check was not actually a representative of the payee supermarket chain. 34 Fed. Cl. at 127-28. Treasury regulations governing the payment of forged Treasury checks did not explicitly address the "double forgery" scenario. *Id.* at 134. However, prior Federal common law allocated the loss for a Treasury check containing a double forgery. *Id.* at 135. The Court of Federal Claims judge concluded that, absent a more explicit provision in the regulations, the regulatory scheme did not override the preexisting Federal common law rule. In *ABN Amro*, in other words, a common law rule *explicitly* covered a situation not explicitly encompassed by a regulatory scheme. The judge concluded that the regulatory scheme, even though it appeared "fairly comprehensive," *id.* at 131, did not address the situation that faced the court and therefore the common law rule continued to govern that situation. That is not the case regarding the facts before this Court today. The common law rule of discharge applies to contractual obligations—releasing one party from the *contractual* obligations upon a material breach of the contract by another party. This common law rule says nothing about regulatory obligations. Therefore, this is not a case where the common law addresses a specific situation that is not addressed by a regulatory scheme. Accordingly, the logic of *ABN Amro* does not suggest that the principle of discharge applies to the regulatory decommissioning requirements that are the subject of this case.

Similarly, in *Amoco Production v. Fry*, another district judge in this judicial district addressed the common law right of offset under the Outer Continental Shelf Lands Act. 904 F. Supp. at 7-9. The Act required that excess royalties paid by a lessee to the government " 'shall be repaid without interest.' " *Id.* at 7 (quoting 43 U.S.C. § 1339(a)). But, at common law, a creditor

has a right to "use money it owes to a debtor to satisfy the debt owed to it." *Id.* at 9. A situation arose where lessees had underpaid in the past and had paid excess royalties. *Id.* at 7. The district court judge concluded that the government's common law right of offset was not abrogated by the statute's provision for the repayment of excess royalties and, thus, the government was able to apply the prior excess payments to the lessees' underpayments. *See id.* at 9. In other words, the statute was silent about the right of offset, and the court concluded that, absent explicit abrogation of that right by Congress, the government retained that right within the statutory scheme that Congress established. Once again, this precedent does not have the implications for the case before the Court today suggested by Plaintiff. In fact, the principle of discharge persists here: Plaintiff's contractual obligations have been discharged by the material breach. No one disputes that the regulatory scheme has not eliminated that result. In that sense, the principle of discharge has become a limited part of the overall regulatory scheme governing the plugging and abandonment of wells. That result is consistent with *Amoco Production*, but *Amoco Production* cannot carry Plaintiff any farther. Indeed, nothing in that case suggests that this specific contract principle is *inserted* by implication into the decommissioning regulations issued by the agency, which the agency has stated are independent of the contractual obligations in the off-shore leases issued pursuant to the statutory scheme.

Analyzing the other cases cited by the parties regarding the scope of the *Texas* principle yields similar results. Relying on *United States v. Texas*, several federal Courts of Appeals have concluded that tools available to the government at common law were not eliminated *sub silentio* by statutory provisions through which Congress legislated in related areas of the law. *See, e.g.*, *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 543 (6th Cir. 2013) (judicial power to resolve fees disputes not abrogated); *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 15-16

(1st Cir. 2005) (right to recoup payments not repealed); *Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1054-55 (Fed. Cir. 1993) (administrative offset provisions of the Debt Collection Act did not eliminate common law offset rights). Others courts have applied principle of *United States v. Texas* in concluding that common law defenses were not eliminated by legislation. *See, e.g.*, *Manoharan v. Rajapaksa*, 711 F.3d 178, 179-80 (D.C. Cir. 2013) (head of state immunity applies in Torture Victim Protection Act suits); *Matar v. Dichter*, 563 F.3d 9, 13-14 (2d Cir. 2009) (Foreign Sovereign Immunities Act did not abrogate immunity of former foreign officials). The case currently before the Court does not fit into any of these specific categories: this case is not about eliminating common law powers of the government or about eliminating litigation defenses available at common law.

In still other cases, courts have concluded that common law principles helped to interpret the meaning of a specific statutory or regulatory scheme as a result of the particular interplay between the common law rule and the statutory or regulatory scheme in question. *See, e.g., Ins. Co. of the West v. United States*, 243 F.3d 1367, 1374 (Fed. Cir. 2001) (common law rights of assignees unchanged by waiver of sovereign immunity in Tucker Act); *In re Niles*, 106 F.3d 1456, 1461 (9th Cir. 1997) (common law allocation of burdens of proof bolsters conclusions regarding burden of proof under Bankruptcy Act provision). Taken together, these cases confirm that there is no general principle—as Plaintiff maintains—that a common law principle like the discharge rule should be automatically read into a regulatory scheme such as the one at issue here. These case do establish that explicit language—at least more explicit than presented in this case—would be necessary to abrogate the discharge rule itself. Importantly, however, BSEE has not abrogated that rule, which by its own terms applies to contractual obligations. BSEE concluded that the regulatory requirements regarding decommissioning are independent of the

contractual decommissioning obligations, and, for the reasons stated above, this conclusion is not "plainly erroneous" or "inconsistent with the regulation." There is no principle in the case law that would require this Court to read into the independent regulatory decommissioning requirements a version of the discharge rule. In sum, none of Plaintiff's arguments lead the Court to conclude that the agency's order is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Accordingly, BSEE's order requiring Noble Energy to carry out its regulatory decommissioning obligations regarding Well OCS-P 0320, No. 2, survives this Court's deferential standard of review.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [21] Cross-Motion for Summary Judgment and DENIES Plaintiff's [19] Motion for Summary Judgment. The Court concludes that the agency's interpretation of its decommissioning regulation, which is at issue in this case, is not "plainly erroneous" or "inconsistent with the regulation," and the principle of discharge does not apply to the regulatory decommissioning obligations in question. Therefore, the Court upholds the challenged order in this case. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: June 8, 2015

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge